c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

MARY F. EDMISTON,
Plaintiff

CIVIL ACTION NO. 1:18-CV-00128

VERSUS

JUDGE DRELL

LOUISIANA SMALL BUSINESS
DEVELOPMENT CENTER, *ET
AL.*,
Defendants

MAGISTRATE JUDGE PEREZ-MONTES

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendant Louisiana Small Business Development Center ("LSBDC"). (Doc. 31).  LSBDC seeks dismissal for failure to state a claim under Rule 12(b)(6) and for insufficient service of process under Rule 12(b)(5).  (Doc. 31).  Pro se Plaintiff Mary F. Edmiston ("Edmiston") responded with a Motion for Leave to File Second Amended Complaint ("Motion to Amend") (Doc. 33),[1] and a response styled as a "Motion of Request to Deny Defendants' Motion to Dismiss." (Doc. 39).  LSBDC opposes Edmiston's Motion to Amend (Doc. 40).

Edmiston's Motion for Leave to File Second Amended Complaint (Doc. 33) should be denied as futile.  Because LSBDC lacks capacity to be sued, LSBDC's Rule 12(b)(6) Motion to Dismiss (Doc. 31) should be granted.  LSBDC's Rule 12(b)(5) Motion to Dismiss (Doc. 30) should be denied as moot.

---

[1] Also pending before the Court is Edmiston's Motion for Service (Doc. 34) to effect service of her second amended Complaint (Doc. 33).

## I.    <u>Background</u>

On February 1, 2018, Edmiston, proceeding in forma pauperis, filed employment discrimination and retaliation claims against LSBDC and the State of Louisiana (the "State"). (Doc. 1). Edmiston sought leave to amend her Complaint on March 19, 2018, and on March 29, 2018, under Rule 15(a) (Docs. 10, 15). The Court allowed both amendments. (Docs. 16, 17). Edmiston's Complaint, as amended, removed the State as a Defendant, and amended the address for service on LSBDC. (Docs. 18, 19).

Edmiston asserts two causes of action: (1) wrongful termination caused by age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 28 U.S.C. §§ 621, *et seq.* ("ADEA"); and (2) a Title VII violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). (Doc. 19). Edmiston alleges that on March 20, 2015, she was employed by LSBDC, Northwest and Central Region ("NWCR"), in Natchitoches, Louisiana, on the campus of Northwestern State University (the "University"). (Doc. 19). Edmiston asserts the University and LSBDC are affiliated through a contractual agreement. (Doc. 19). Edmiston alleges she was hired as the LSBDC NWCR administrative assistant, training coordinator, and office manager. (Doc. 19). She claims her title was changed to regional administrative manager and training coordinator upon recommendation of the LSBDC state director in June 2015. (Doc. 19). Edmiston held her position for nineteen (19) months through October 24, 2016, when she claims she was wrongfully terminated for alleged poor performance and insubordination. (Doc. 19).

Edmiston alleges LSBDC is a Louisiana organization offering education and technical assistance to existing and start-up small business entrepreneurs in Louisiana at no cost to the client. (Doc. 19). Edmiston alleges funding comes from grants from the U.S. Small Business Administration ("SBA"), Louisiana Economic Development Corporation ("LED"), participating host universities and the private sector. (Doc. 19).

Edmiston alleges her supervisor changed three times during her tenure, as follows: 13 months with Regional Director Mark Galyean, age 65 ("Galyean"); 18 months with Associate Regional Director and Acting Regional Director, Jim Kilcoyne, age 58 ("Kilcoyne"), and 3 months with Regional Director, Dana Cawthon, age 47 ("Cawthon"). (Doc. 19). Edmiston further alleges she had a successful administrative career for over 20 years without a formal personnel complaint against her until a week prior to her wrongful termination. (Doc. 19). Edmiston asserts she possesses excellent letters of recommendation, as attached to her Complaint. (Doc. 19). She further claims LSBDC's State Director, Rande Kessler ("Kessler"), recommended she receive a promotion only three months into her tenure with LSBDC. (Doc. 19). Edmiston alleges Kessler recommended her for a raise, which did not materialize due to funding issues. (Doc. 19). Edmiston claims she was directed to supervise two administrative assistant and training coordinators in the Alexandria and Shreveport offices. She complied. (Doc. 19).

According to Edmiston, LSBDC's reasons for termination are pretext for age discrimination and retaliation. (Doc. 19). Edmiston alleges the documents submitted

by LSBDC in its EEOC Respondent Position Statement ("RPS") as evidence of her incompetence and insubordination were fabricated. (Doc. 19). Edmiston claims the University's Equal Employment Opportunity/Affirmative Action Compliance Officer, Veronica Biscoe ("Biscoe"), told her on January 9, 2018 she was eligible for rehire and there was nothing derogatory in the University's personnel file. (Doc. 19).

Edmiston alleges LSBDC made ongoing false, fabricated, and defamatory statements about her competency and character to work with associates and superiors. (Doc. 19). She further alleges LSBDC made more than fifty false and fabricated statements to the U.S. EEOC in their RPS. (Doc. 19). Edmiston claims photographs provided to the EEOC were "staged" by Cawthon, a "fraud" that falsified her own employment credentials. (Doc. 19). Edmiston alleges LSBDC is vicariously liable for Cawthon's behavior. (Doc. 19).

Edmiston alleges age discrimination as shown by the discharge of her two former supervisors, Galyean and Kilcoyne. (Doc. 19). Edmiston further alleges both were discharged despite their successful performances and high achievements. (Doc. 19). Edmiston alleges she concluded there was no other reason for their wrongful discharge, but for their age. (Doc. 19). Edmiston alleges LSBDC has a double-standard management matrix – one for supervising older workers, and another for supervising younger workers. (Doc. 19). Edmiston contends she, Galyean, and Kilcoyn (all older workers) were required to use rental cars for all state travel, while Cawthon was allowed to use her personal vehicle for state travel. (Doc. 19).

Edmiston alleges a thirty-something LSBDC NWCR comparator, an administrative assistant and training coordinator, was employed in the Shreveport office from October 5, 2015 to mid-February 2017, when she resigned for another position. (Doc. 19). Edmiston alleges she had comparable job responsibilities and title, exclusive of supervisory duties as Edmiston, but with numerous performance and conduct complaints against her documented in her personnel file. (Doc. 19). Edmiston further alleges that this comparator was never terminated, but was afforded two or more documented counseling sessions. (Doc. 19). Edmiston asserts that, unlike the comparator, she had no written complaints until one week prior to her termination. (Doc. 19). Edmiston was never offered a formal documented counseling session. (Doc. 19).

Edmiston contends Cawthon subjected her to 92 days of discriminatory, retaliatory, defamatory, and malicious treatment until her termination. (Doc. 19). Edmiston alleges LSBDC gave preferential treatment to the comparator and Cawthon, and adverse treatment to her due to her age. (Doc. 19). Edmiston alleges she identified the comparator employee in her EEOC charge, but LSBDC did not address the comparator in its RPS. (Doc. 19). Edmiston alleges that if one were to compare Cawthon's professional fraud, and the comparator's misconduct with her alleged poor performance and insubordination, one would conclude that but for her age she would never have been fired. (Doc. 19).

Edmiston alleges she made seven complaints of LSBDC's age discrimination and age retaliation on July 29, 2016, August 23, 2016, twice on September 5, 2016,

twice on September 26, 2016, and once more on October 4, 2016.  (Doc. 19).  Edmiston alleges she submitted written notice on October 24, 2016 of her intent to file age discrimination and retaliation charges against the LSBDC and the Louisiana Commission on Human Rights.  (Doc. 19).

Edmiston claims she filed a formal EEOC charge, a fact which LSBDC became determined to destroy her professional reputation.  (Doc. 19).  Edmiston claims she was wrongfully terminated on October 24, 2016, after working with Cawthon for 92 days.  (Doc. 19).  A younger, purportedly less qualified candidate replaced her.  (Doc. 19).  Edmiston alleges she timely filed an EEOC charge and brings this action within ninety (90) days of receipt of a Notice of Right to Sue issued on November 21, 2017.  (Doc. 19).

Edmiston seeks "liquid damages," future pecuniary damages, up to three years of back pay, including prejudgment interest, up to three years of front pay from the date of judgment, permanent injunctions to prevent future ADEA and Title VII violations by LSBDC, a verbal apology, a positive letter of recommendation, removal of derogatory comments from her personnel file, reasonable attorney's fees, reasonable expert witness fees, and court costs. (Doc. 19).

LSBDC responded with a Rule 12(b)(5) and 12(b)(6) Motion to Dismiss.  (Doc. 31), seeking dismissal for insufficiency of service of process and failure to state a claim.  In response, Edmiston filed a Motion to Amend, seeking to re-add the State as a Defendant, and to add new Defendant Board of Supervisors for the University of Louisiana System (the "Board of Supervisors").  (Docs. 33, 37).  Edmiston requests

denial of the motions to dismiss based on the proposed amended complaint. (Doc. 39).

LSBDC opposes the amendment. (Doc. 40).

## II.    Law and Analysis

### A.    Standards governing the Motion to Amend

Fed. R. Civ. P. 15(a)(1) provides that:

> a party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, the party may amend within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires. Fed. R. Civ. P. 15(a)(2).

Although a court should liberally grant leave, it possesses the discretion to grant or deny a motion to amend. See Ellis v. Liberty Life Assur. Co of Boston, 394 F.3d 262, 268 (5th Cir. 2004). In determining whether to grant leave, a court may consider a variety of factors, including: "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." Id.

Ordinarily, "a pro se litigant should be offered an opportunity to amend [her] complaint before it is dismissed." Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009) (citation omitted); Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter &

Co., 313 F.3d 305, 329 (5th Cir. 2002). Granting leave to amend, however, is not required if the plaintiff has already pleaded her "best case." Brewster, 587 F.3d at 768 (citing Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998)). A district court "acts within its discretion in denying leave to amend where the proposed amendment would be futile because it could not survive a motion to dismiss." Rio Grande Royalty Co. v. Energy Transfer Partners, L.P., 620 F.3d 465, 468 (5th Cir. 2010) (citing Briggs v. Mississippi, 331 F.3d 499, 508 (5th Cir. 2003)); see also Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). In this context, futility means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 Fed.App'x. 366, 367 (5th Cir. 2010).

### B.   Standards governing the 12(b)(5) Motion to Dismiss

The plaintiff is responsible for having the summons and complaint served within 90 days after the complaint is filed. Fed. R. Civ. P. 4(c)(1) and 4(m). If the defendants have not been served within this time frame, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id. However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id.

A state, a municipal corporation, or any state-created governmental organization that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant. Fed. R. Civ. P. 4(j).

Louisiana Revised Statute 13:5107(A) provides:

> In all suits filed against the state of Louisiana or a state agency, citation and service may be obtained by citation and service on the attorney general of Louisiana, or on any employee in his office above the age of sixteen years, or any other proper officer or person, depending upon the identity of the named defendant and in accordance with the laws of this state, and on the department, board, commission, or agency head or person, depending upon the identity of the named defendant and in accordance with the laws of this state, and on the department, board, commission, or agency head or person, depending upon the identity of the named defendant and the identity of the named board, commission, department, agency, or officer through which or through whom suit is to be filed against.

La. R.S. § 13:5107.

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process was not timely made in accordance with Federal Rule of Civil Procedure 4 or was not properly served in the appropriate manner. Fed. R. Civ. P. 12(b)(5).

## C.    Standards governing the 12(b)(6) Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

### D.    Edmiston's Motion to Amend (Doc. 33) should be denied as futile.

Edmiston has amended her Complaint twice already (Docs. 18, 19). Thus, she is no longer permitted to amend without leave of court. Fed. R. Civ. P. 15(a)(1). An amendment is futile if it would not survive a Rule 12(b)(6) motion to dismiss. Stripling, 234 F.3d at 873; accord Fenghui Fan, 377 Fed.App'x. at 367. Edmiston's proposed second amendment is virtually identical to her Amended Complaint, except Edmiston seeks to re-add the State, and to add new Defendant the Board of Supervisors. (Docs. 19, 33).

As discussed below, Edmiston's amended Complaint will not survive a Rule 12(b)(6) motion to dismiss. Construed in a light most favorable to Edmiston, the proposed amended Complaint fails to state a claim upon which relief may be granted. Thus, Edmiston's Motion to Amend (Doc. 33) should be denied as futile.  See Stripling, 234 F.3d at 873.

### E.    Edmiston fails to state a plausible claim for relief against LSBDC, as it is not a juridical entity capable of being sued.

LSBDC seeks dismissal under Rule 12(b)(6) of all claims against LSBDC on grounds that it lacks the capacity to be sued.  (Doc. 31-2).  LSBDC asserts it does not exist separate and apart from the Board of Supervisors for the University of Louisiana System.  (Doc. 31-2).  The Fifth Circuit has implicitly approved Rule 12(b) motions arguing lack of capacity to be sued.  Batiste v. Bonin, 2007 WL 1791219, at

*1 n. 1 (W.D. La. June 13, 2007) (citing <u>Darby v. Pasadena Police Dep't.</u>, 939 F.2d 311 (5th Cir. 1991)).

The capacity of a party such as the LSBDC – which is neither an individual nor a corporation – is determined by the law of the state in which the court is located. Fed. R. Civ. P. 17(b); <u>see</u> <u>also</u> <u>Darby</u>, 939 F.2d at 313.  The Court must look to Louisiana law to determine whether LSBDC is an entity capable of being sued. Under Louisiana law, an entity must qualify as a "juridical person" before it may be sued. <u>See</u> <u>Jackson v. Louisiana Tech. Univ.</u>, 2011 WL 6749014 (W.D. La. November 22, 2011) (citing <u>Hunt v. Town of New Llano</u>, 930 So.2d 251, 254 (La. App. 3 Cir. 2006)).

Louisiana Civil Code Article 24 provides:

> There are two kinds of persons:  natural persons and juridical persons. A natural person is a human being.  A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership.  The personality of a juridical person is distinct from that of its members.

La. Civ. Code art. 24.  The Court found no caselaw determining whether the LSBDC is a juridical person with capacity to sue or be sued.  In assessing a governmental entity's juridical status, the Louisiana Supreme Court has observed that

> [T]he determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit *for the particular purpose at issue.* In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.
> *Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.*
> *14 Roberts v. Sewerage & Water Bd. of New Orleans,* 634 So.2d 341, 346–47 (La.1994) (citations omitted) (emphasis added).

<u>Jackson v. Louisiana Tech Univ.</u>, CIV.A. 11-0524, 2011 WL 6749014, at *13–14 (W.D. La. Nov. 22, 2011), <u>report and recommendation adopted,</u> CIV.A. 11-0524, 2011 WL 6749044 (W.D. La. Dec. 22, 2011).

The University of Louisiana System is composed of institutions under the supervision and management of the Board of Supervisors for the University of Louisiana System, including Northwestern State University of Louisiana at Natchitoches.  La. R.S. 17:3217(5).  "[E]ach postsecondary system management board . . . shall have authority to exercise power necessary to supervise and manage the day-to-day operations of institutions of postsecondary education under its control, including, but not limited to . . . sue and be sued.  La. R.S. 17:3351(A)(1).

A review of Louisiana law shows the LSBDC was established under the administration of the Board of Supervisors.  La. R.S. 17:1812.  Subsection A provides, in pertinent part:

> A.  Northwestern State University at Natchitoches is hereby authorized to establish and operate a small business development and management institute which may aid and assist small businesses in solving problems inherent in such enterprises. The establishment and operation of the institute shall be subject to the constitutional authority of the Board of Regents and the Board of Supervisors for the University of Louisiana System.
>
> B.  Northwestern University at Natchitoches is further authorized to utilize all of its colleges or departments in operating the institute and providing needed services.

La. R.S. 17:1812(A)-(B).[2]

---

[2] According to the University's webpage, their "economic development efforts are spearheaded by the Small Business Development Center ("SBDC") through the University's Office of Technology, Innovation and Economic Development.  The NSU SBDC is one of ten centers anchored by the

LSBDC argues that the Louisiana Court of Appeal for the Third Circuit has recognized that the University does not exist separate and apart from the Board of Supervisors, citing Marson v. Northwestern State University, 607 So.2d 1093 (La. App. 3 Cir. 1992).   In Marson, the Board of Trustees (now the Board of Supervisors) was found to be the right defendant under its supervisory powers, not the University. Id.   Like Marson, the Board of Supervisors is the proper defendant in this case.   See La. R.S. 17:3351(A)(1); Delahoussaye v. City of New Iberia, 937 F.2d 144, 148 (5th Cir. 1991); see also Harris v. Louisiana State Univ. Med. Ctr., 2006 WL 2054481, at *4 (W.D. La. May 22, 2006) (finding that the Louisiana State University Medical Center cannot be distinguished from the Board of Supervisors because the Board is the operative arm of the medical center).

Here, LSBDC cannot be distinguished from the Board of Supervisors, the operative arm of LSBDC.   See La. R.S. 17:1812(A)-(B).   Because LSBDC was established as an institution of the University, it lacks the capacity to be sued. Rather, the Board of Supervisors as the operative arm of the university has the capacity to be sued relating to the operation of the LSBDC.   See R.S. 17:3351(A)(1). Edmiston should have named the Board of Supervisors for the University of

---

[LSBDC] in Monroe. . . . The LSBDC [NWCR] hosted by [the University] serves [a 14 parish area, including] Natchitoches." See https://www.nsula.edu/sbdc/. "The LSBDC is funded in part through a Cooperative Agreement with the [SBA], [LED], and participating institutions of higher education." See https://www.lsbdc.org/about.php; see also https://www.nsula.edu/sbdc/about-sbdc/. However, since the filing of this action, the LSBDC NWCR office moved from the University's Natchitoches campus to Bossier Parish Community College's campus, with full operations effective on October 1, 2018. See http://www.lsbdc.org/blog/?p=2987.

Louisiana System, rather than LSBDC, as a Defendant.  As a result, LSBDC should be dismissed with prejudice.[3]

**F.**  **Edmiston's ADEA claims are barred by Eleventh Amendment Sovereign Immunity.**

Federal courts have a continuing obligation to examine the basis for their jurisdiction.  Bradley v. St. Landry Parish Sheriff's Dep't., 2018 WL 1936665, at *1 (W.D. La. April 24, 2018) (citing MCG, Inc. v. Great Western Energy Corp., 896 F.2d 170, 173 (5th Cir. 1990)). The issue may be raised by the parties, or it may be raised by the court *sua sponte*, at any time.  Fed. R. Civ. P. 12(h)(3); MCG, Inc., 896 F.2d at 173.  LSBDC's motion to dismiss raises the issue of sovereign immunity as it relates to any potential amendment naming the Board of Supervisors. (Doc. 31-2).  Edmiston seeks to amend her Complaint to add the State and the Board of Supervisors.  (Doc. 33).

"The Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department." Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 185 (5th Cir. 1986); see Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446 (2004) (finding that under the Eleventh Amendment to the United States Constitution, federal courts lack jurisdiction to hear suits against a non-consenting state brought by its own citizens.);

---

[3] Edmiston seeks to remedy the deficiency and amend her Complaint to properly name the Board of Supervisors.  (Doc. 33).  She also seeks to re-add the State as a Defendant.  (Doc. 33).  However, for the reasons stated herein, such amendment is futile and should be denied.  Moreover, since LSBDC lacks capacity to be sued, and Edmiston's amendment naming proper Defendant the Board of Supervisors is futile, LSBDC's motion to dismiss for insufficiency of service under Rule 12(b)(5) should be denied as moot.

see also Pennhurst St. Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1983) (recognizing that a suit against a state agency or department is considered a suit against the state for purposes of Eleventh Amendment immunity application.).

The State of Louisiana has not waived its sovereign immunity. See La. Const. art. XII, § 10; La. R.S. § 13:5106 (prohibiting suits against the State in any court other than a Louisiana state court). The Board of Supervisors is an arm of the state and is likewise entitled to Eleventh Amendment immunity. Delahoussaye, 937 F.2d at 148 (finding that the University of Southwestern Louisiana is an arm of the State and is entitled to sovereign immunity); Richardson v. Southern Univ., 118 F.3d 450, 456 (5th Cir. 1997) (finding that Southern University and its Board of Supervisors is an arm of the State).

Furthermore, a suit against a state official in his or her official capacity is also considered a suit against the state itself. Will v. Mich. Dep't of St. Police, 491 U.S. 58, 71 (1989). Exceptions to Eleventh Amendment immunity as it applies to state officials sued in their official capacities may arise, however, when a plaintiff seeks certain prospective relief. See Ex parte Young, 209 U.S. 123, 160 (1908). However, to fall within the Ex parte Young exception to sovereign immunity, a plaintiff must name individual state officials as defendants in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 n.18 (1985) ("In an injunctive or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants."). Although Edmiston has asserted claims for injunctive relief, her Complaint names only LSBDC, and her proposed amendment seeks to add

16

the State and the Board of Supervisors as defendants. Thus, Edmiston's amendment is futile as she has not overcome Ex parte Young.

Moreover, the Supreme Court has made clear that Eleventh Amendment immunity applies to claims brought under the ADEA. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000) (holding that the ADEA does not validly abrogate the states' Eleventh Amendment immunity to suit by private individuals). Edmiston's proposed amended ADEA claims against the State and the Board of Supervisors are barred by Eleventh Amendment sovereign immunity, and this Court lacks subject matter jurisdiction over those claims.[4]

### G.    Edmiston fails to state a plausible claim for relief under Title VII.

The Fifth Circuit has found that Congress did express its clear intent to abrogate States' Eleventh Amendment immunity for suits brought under Title VII. Ussery v. Louisiana ex rel La. Dep't of Health & Hosps., 150 F.3d 431, 434-35 (5th Cir. 1998); see also Perez v. Region 20 Educ. Service Ctr., 307 F.3d 318, 326 n. 1 (5th Cir. 2002) (finding that the Fifth Circuit has "long recognized that Congress has clearly abrogated the states' Eleventh Amendment immunity in enacting Title VII"). Therefore, the Board of Supervisors is not immune from suit under the Eleventh Amendment as to Title VII claims. See e.g. Davis v. Northwestern State Univ., 1:14-CV-1049, 2015 WL 4544556, at *2 (W.D. La. July 27, 2015).

---

[4] The relief Edmiston seeks under the ADEA is only available in state court. See Kimel, 528 U.S. at 91 ("State employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union.").

However, Title VII prohibits discrimination in employment decisions because of one's *race, color, religion, sex, or national origin.* See 42 U.S.C. § 2000e-2 (emphasis added). Title VII also prohibits an employer from taking an adverse employment action against an employee because she has filed an employment discrimination charge. See 42 U.S.C. § 2000e-3(a); Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006). Edmiston alleges she was retaliated against for continued complaints about age discrimination and retaliatory treatment by a younger coworker. (Doc. 19). Edmiston alleges retaliation against her because she filed a formal EEOC charge for age discrimination. (Doc. 19).

To establish a prima face case of retaliation under Title VII, a plaintiff "must establish that: (1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action." McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir. 2007). However, because Title VII does not cover discrimination because of age, Edmiston cannot bring a Title VII retaliation claim based on reporting alleged acts of age discrimination. See Avina v. JP Morgan Chase Bank, N.A., 413 Fed.Appx. 764, 766 n. 4 (5th Cir. 2011) (citing Jefferies v. Harris Cnty. Cmty. Action Ass'n, 615 F.2d 1025, 1032 (5th Cir. 1980)); General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 586-87 (2004) (noting "Congress chose not to include age within discrimination forbidden by Title VII").

Therefore, Edmiston's proposed amended Complaint (Doc. 33) alleging Title VII claims against the Board of Supervisors and the State should be denied as futile.[5]

## III.  Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Edmiston's Motion for Leave to File Second Amended Complaint (Doc. 33) be DENIED as futile.

IT IS FURTHER RECOMMENDED that LSBDC's Rule 12(b)(5) Motion to Dismiss (Doc. 31) be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Edmiston's Motion for Service (Doc. 34) be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that LSBDC's Rule 12(b)(6) Motion to Dismiss (Doc. 31) be GRANTED.  Edmiston's claims against LSBDC should be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

---

[5] Because it is recommended that Edmiston's Motion to Amend (Doc. 33) be denied as futile, Edmiston's Motion for Service (Doc. 34) of her second amended Complaint (Doc. 33) should be denied as moot.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____14th_____ day of November, 2018.

Joseph H.L. Perez-Montes
United States Magistrate Judge

20